### In re FILER.

(District Court, S. D. New York. December 18, 1900.)

1. BANKRUPTCY—JURISDICTION—DOMICILE OF ABSCONDING DEBTOR.

Where the domicile of an alleged bankrupt has been for several years within the district where the petition is filed, and his family continues to reside there, the fact that more than three months before the filing of the petition he absconded to avoid arrest will not defeat the jurisdiction of the court, unless it is shown that he had an intention to change his domicile, and to acquire another elsewhere; and the burden of establishing such fact rests upon those objecting to the jurisdiction.

2. SAME—ACTS OF BANKRUPTCY—ABSCONDING WITH PROPERTY.

The absconding of an insolvent debtor, taking with him money or property not exempt, constitutes a concealment and removal of the property with intent to defraud his creditors, and is an act of bankruptcy, under Bankr. Act 1898, § 3a, cl. 1.

In Bankruptcy. On petition for involuntary adjudication.

108 F.—14

Samuel Fleischman, for petitioning creditors.

Nicoll, Lindsay & Anable, for Kohn & Co., opposing creditors.

BROWN, District Judge. Upon an involuntary petition to have an absconding debtor adjudged a bankrupt, other creditors answer the petition and oppose adjudication on the grounds.

(1) That the court has no jurisdiction, because the debtor did not have either residence, domicile, or place of business within the district for more than four months prior to the filing of the petition; and

(2) Because the suffering of an attachment against the debtor several months prior to the petition, no judgment or execution thereon having been entered, was not an act of bankruptcy as charged in the petition; and that the averment of concealing property was not sustained by the proof. Upon consideration of the evidence and of the elaborate briefs presented, I am of the opinion that the objections in this case should not be sustained, and that an adjudication should be ordered. The material facts are as follows:

For several years prior to December 11, 1899, the debtor's residence and domicile was in the city of New York. During 1899 he was employed as cashier by Kohn & Co., bankers and stockbrokers, in Broadway. While thus employed he committed various forgeries, involving Kohn & Co. in considerable loss, and finding that the discovery of these forgeries was immediately impending, on December 11th he absconded to avoid prosecution. On January 19, 1900, he was heard from as being then in Los Angeles, Cal., but otherwise his whereabouts are unknown. On January 10, 1900, Kohn & Co. obtained an attachment on certain bonds and stock in a suit brought against him in the state court, but no judgment or execution has been obtained or issued thereon. On May 9, 1900, one day before the expiration of the four months from the issuing of the attachment, the petition in the present proceeding was filed by three creditors, alleging that the debtor was insolvent, that his residence and domicile had been within this district for the greater part of the six months preceding; that the above attachment, unless it should be vacated and superseded by bankruptcy proceedings, was likely to result in the appropriation of the debtor's property by the attaching creditor alone; that the bankrupt had departed from this state with intent to defraud his creditors and had not been heard from since issuing the said attachment; that he had not vacated or discharged the same, and that within four months he had concealed cash and other personal property of the value at least of $1,000 with intent to hinder, delay and defraud his creditors.

1. To sustain jurisdiction in this case it is only necessary that it should appear that the bankrupt's domicile continues within this district, notwithstanding his flight to escape prosecution on December 11, 1899. Before that date his domicile here is not questioned. He resided here with his wife and family for several years; they still remain here; and the debtor's domicile is presumed to remain here unless there is sufficient evidence of the debtor's intent to change it and acquire a new domicile elsewhere. The burden of proof in this regard rests upon the defendants. I do not think

that any of the facts in evidence indicate any intention by the bankrupt to change his previous domicile or to acquire any other domicile elsewhere. In Mitchell v. U. S., 21 Wall. 350, 353, 22 L. Ed. 584, 588, Mr. Justice Swayne in delivering the opinion of the supreme court says:

"A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains."

These principles have been repeatedly affirmed and followed. Desmare v. U. S., 93 U. S. 605, 609, 23 L. Ed. 959; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690; Anderson v. Watt, 138 U. S. 694, 706, 11 Sup. Ct. 449, 35 L. Ed. 1078; Chambers v. Prince (C. C.) 75 Fed. 176, 180; Marks v. Marks (C. C.) 75 Fed. 321, 325; De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996.

In Desmare v. U. S., supra, the claimant had been domiciled in New Orleans and afterwards entered the Rebel lines and engaged in business in the parish of St. Landry, where he took an oath of allegiance to the Confederate government and became its agent. This was held to be insufficient evidence of a change of domicile. The court again says:

"Before the breaking out of the late Civil War, the appellant was domiciled in the city of New Orleans. He was a member of a commercial partnership there. There is no proof of any change of domicile subsequently. A domicile once existing continues until another is acquired. A person cannot be without a legal domicile somewhere. Where a change of domicile is alleged, the burden of proof rests upon the party making the allegation."

In the present case, as stated above, I do not find any evidence of intention by the debtor to acquire any new domicile elsewhere. He fled from this district to escape prosecution. Whenever that danger ceases to exist, from whatever cause, there is not the least doubt from portions of the evidence submitted, that he would immediately return here to his family. The case is essentially different from that of Inhabitants of Wilbraham v. Inhabitants of Ludlow, 99 Mass. 587, and other similar cases.

2. I do not find it necessary to decide whether the debtor's failure to remove an attachment against his property for a period of near four months, where no judgment or execution has been entered or issued, should be deemed substantially an act of bankruptcy within section 3a (3) of the bankrupt act. In the recent case of In re Lesser the circuit court of appeals for this district[1] in affirming (Dec. 6, 1900) the judgment of this court (100 Fed. 433, 3 Am. Bankr. R. 815) expressly reserves, as I understand, any expression of opinion as regards the validity of an attachment issued more than four months prior to the commencement of bankruptcy proceedings, where the judgment in the attachment suit is not entered until within the

---

[1] Opinion withdrawn, and case certified to supreme court.

latter period. If such an attachment remains valid in such cases, it is evident that creditors would be without any remedy to prevent a preference from being acquired by the attaching creditor through a mere delay of his proceedings in entering judgment until the four months had elapsed, unless the bankrupt's creditors should be able to prove some other independent act of bankruptcy, which it might well happen would not be within their power. Without considering this question further, however, the evidence shows without doubt that at the time of the bankrupt's flight, he took with him property to the amount of at least from $2,000 to $3,000, which if he had remained here would not have been exempt, but must have been transferred to his trustee in bankruptcy. There being no doubt as to the insolvency of the debtor, such a flight with property, is both concealment and removal of property with intent to defraud creditors within section 3a (1).

Adjudication is ordered.