## In re DAVIS.

### (District Court, D. New Jersey. October 3, 1914.)

1. BANKRUPTCY (§ 100*)—JURISDICTION OF COURT—DOMICILE OF BANKRUPT—PROOF OF CHANGE.

An alleged bankrupt, who was a builder, and had for many years had his domicile and been engaged in business in the district of New Jersey, where the petition was filed, about a year before that time, being financially embarrassed and in failing health, conveyed all of his property to a trustee for the benefit of his creditors, and on the advice of a physician went to California for the benefit of his health, and was still there at the time of the filing of the petition. *Held*, that the burden of proving that he had changed his domicile from New Jersey, so as to defeat the jurisdiction of the court, rested on intervening attachment creditors, who contested the adjudication; that the fact that he had been absent for a year, and had during that time continued to reside in California, was not, under the circumstances, sufficient, in the absence of further proof of his intention not only to abandon the old domicile, but also to acquire a new one in California.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 60, 131, 141–144; Dec. Dig. § 100.*]

2. DOMICILE (§ 2*)—DEFINITION—RESIDENCE DISTINGUISHED.

Domicile is of more extensive signification than residence, and includes, beyond mere physical presence at a particular locality, an intention to constitute it a permanent abiding place.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 2; Dec. Dig. § 2.*
For other definitions, see Words and Phrases, First and Second Series, Domicile.]

In Bankruptcy. In the matter of Joseph Davis, bankrupt. On motion to confirm and exceptions to report of special master recommending dismissal of answer of intervening creditors. Report confirmed, and answer dismissed.

William L. Brunyate, of Newark, N. J., for petitioning creditors.
William E. Holmwood, of Newark, N. J., for intervening creditors.

HAIGHT, District Judge. This matter is before the court on a motion to confirm, and on the exceptions filed to the report of the special master, to whom was referred the issues raised by the petition for adjudication and the answer of the intervening creditors. He has recommended a dismissal of the answer. The alleged bankrupt has not contested an adjudication; in fact, the act of bankruptcy alleged is an admission in writing, signed by his attorney, and attached to the petition for adjudication, of the bankrupt's inability to pay his debts and his willingness to be adjudged a bankrupt on that ground. An adjudication was entered upon the filing of the petition. Subsequently, and before the expiration of the time allowed by the bankruptcy act, the intervening creditors filed an answer. The order of adjudication was not vacated, but the issues raised by the petition and answer were referred to a special master, and the proceedings thereon were conducted in the same manner as though an adjudication had not been entered. If the intervening creditors prevail, the adjudication will, of course, be vacated; but, if they do not, the adjudication will stand, and their answer be dismissed. Within four months prior to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

filing of the petition, the answering creditors caused an attachment to be issued out of the Essex county circuit court against the property of the bankrupt. This will be vacated, if the petitioning creditors prevail; but, if they do not, the answering creditors will secure a preference. Three questions are presented:

(1) Whether the attorney who signed the consent to adjudication had, in fact, authority to do so.

(2) Whether the domicile of the bankrupt had been within the territorial jurisdiction of this court for the preceding six months, or the greater portion thereof.

(3) Whether the answering creditors have a valid and enforceable claim against the bankrupt.

As to the first question, I entertain no doubt whatever that the special master reached a proper conclusion. I need but refer to the very excellent analysis of the evidence contained in his report.

As to the second question, I think that the special master has correctly stated the legal principles which govern, and in his application of them to the facts has reached a proper conclusion. For many years prior to May, 1913, the bankrupt had his domicile and had been engaged in business in East Orange and South Orange, Essex county, N. J. He was a builder and dealt generally in real estate. In the spring of 1913, having become financially embarrassed, he conveyed all of his property (the same being located in this district) to a trustee for the benefit of his creditors. He expected that sufficient would be realized therefrom to pay all his creditors in full, and that something would be left for himself.

Being then in failing health, he was advised by his physician to "go away, drop business cares, and secure a complete rest." Accordingly, in May, 1913, he went to California, after having been assured by his physician that it would be a "good place" for him. He has remained in the latter place up to the present time. His three daughters accompanied him, although his wife appears not to have done so. Whether she has joined him since, the evidence does not disclose. The furniture which had been in his home, and which appears to have belonged to one of his daughters, was at first stored in a warehouse in East Orange; but later, by direction of the daughter, some of it was shipped to California.

The petition was filed and the order of adjudication entered on April 29, 1914. It is clear that the bankrupt's principal place of business had not been, nor had he resided, within this district, for the six months, or the greater part thereof, preceding the filing of the petition and the adjudication. The intervening creditors contend that his domicile was, likewise, not within this district during that time, and that therefore the court is without jurisdiction to entertain the petition.

[2] The present Bankruptcy Act (Act July 1, 1898, c. 541, § 2, subd. 1, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]) recognizes a distinction between one's residence and domicile. This the law has always done. Domicile is of more extensive signification than residence, and includes, beyond mere physical presence at a particular locality, an

intention to constitute it a permanent abiding place. A clear statement of the distinction is found in Brisenden v. Chamberlain (C. C.) 53 Fed. 307. It having been established that in May, 1913, and for many years prior thereto, the bankrupt's domicile had been this district, it is necessary to ascertain whether it has been changed. The principles of law which must govern in the solution of this question have thus been stated by Mr. Justice Swayne, in Mitchell v. U. S., 21 Wall. at 353, 22 L. Ed. 584:

"A domicile, once acquired, is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject."

These principles have been consistently followed by the Supreme Court and are universally accepted. Desmare v. United States, 93 U. S. 605, 23 L. Ed. 959; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690; Anderson v. Watt, 138 U. S. 694, 11 Sup. Ct. 449, 34 L. Ed. 1078. Instances of their application in the bankruptcy courts are found. In re Filer (D. C. S. D. N. Y.) 108 Fed. 209, 5 Am. Bankr. Rep. 332; In re Williams (D. C. W.) 99 Fed. 544, 3 Am. Bankr. Rep. 677; In re Berner, 3 Am. Bankr. Rep. 325; In re Clisdell, 2 Am. Bankr. Rep. 424.

[1] The burden of proving the change of domicile was, therefore, on the intervening creditors. The argument of their counsel seems to assume that it is sufficient, in order to discharge this burden, to show that the bankrupt had decided to remain permanently away from the old domicile, without showing an intention to remain permanently in the new place of residence. But this is not sufficient, because the old domicile remains until a new one is acquired, and a new one is not acquired unless there is a residence in a new locality, coupled with the intention to remain there. One cannot have two domiciles at the same time, but is always deemed to have one.

Even if the evidence could be said to demonstrate an intention on the bankrupt's part to abandon New Jersey as his domicile, it fails to prove his intention to remain permanently in California and make it his domicile. The bankrupt's intention, in this case, must be gathered from the circumstances, his declarations, and letters written by him. The evidence is quite meager. It does not show whether he is keeping house or boarding, nor whether he has paid personal taxes, or voted or attempted to vote, in California. His testimony has not been taken. It does appear, however, that he went to California originally for his health, and that before his departure he informed the attorney, to whom he had intrusted his affairs, that he would return as soon as he was in shape to do so, and that he wrote his sister in the latter part of 1913 that a doctor had ordered him to a sanitarium for a year. However, in other letters, written to friends, he speaks of his health

being improved and of attempting to do some business. In the last of these letters, written in December, 1913, referring to a rumor (about which this friend had evidently written him) of his intention to return to East Orange at Christmas, he used this significant expression, indicating, I think, an intention to return to his old home:

"I doubt if I shall see East Orange for some months yet."

In some of these letters he speaks of certain advantages of California over New Jersey, referring to the climate, cost of living, and characteristics of the people. Neither these expressions nor his attempt to do some business are inconsistent with an intention to stay in California temporarily. He appears to have been without means, and it was probably necessary for him to do something in order to support himself.

But it is further urged on behalf of the answering creditors that where one lives is prima facie his domicile, and that as they have shown that the bankrupt's place of residence, for at least six months prior to the filing of the petition, was in the state of California, they have discharged the burden of showing a change in domicile. In support of this contention Ennis v. Smith, 14 How. 400, 411 (14 L. Ed. 472), is cited. It is true that Mr. Justice Swayne, speaking for the Supreme Court in that case, said:

"Where a person lives is taken prima facie to be his domicile, until other facts establish the contrary."

But he also said (same page):

"It is difficult to lay down any rule under which every instance of residence could be brought, which may make a domicile of choice. But there must be, to constitute it, actual residence in the place, with the intention that it is to be a principal and permanent residence."

The opinion points out that a removal from one's place of residence does not prima facie prove a change in his domicile, when it appears that the removal was, for some particular purpose, expected to be only of a temporary nature, and which is not inconsistent with an intention to return to the original domicile. To the same effect is De Bonneval v. De Bonneval, 1 Curt. 856.

In the case at bar it is shown that the bankrupt's removal was for a particular purpose, which is not inconsistent with an intention to return to the original domicile. It follows, therefore, that the bankrupt's residence in California does not prima facie prove his domicile there. The evidence does not demonstrate, in my judgment, that the bankrupt has acquired a new domicile in California or elsewhere, or for that matter has determined to abandon his domicile in New Jersey. It therefore follows that his domicile still continues in the state of New Jersey.

This disposition of the first and second of the above-stated questions makes it unnecessary to consider whether or not the answering creditors have a valid and enforceable claim against the bankrupt. No opinion is expressed on this phase of the matter.

The special master's report will be confirmed, and the answer of the intervening creditors dismissed, with costs.